SPECTOR, Chief Judge.
This appeal is from a final judgment in favor of plaintiffs entered by the Circuit Court of Gadsden County, Florida, based upon a complaint for reformation of several deeds constituting an alleged chain of title to some 25 acres of land in Gadsden County, Florida.
It appears from the record by the testimony and by comments made by the trial court, that there had previously been pending in the same court and before the same trial judge, an action involving the same lands in which the plaintiffs herein were also the plaintiffs and the defendants were a certain Mr. Anderson and a certain Mr. VanLandingham. It appears that the said defendants, Anderson and VanLandingham, were claiming to be the owners of and in possession of the same 25 acres which formed the basis of the instant action. According to a statement by the trial court, this prior suit was disposed of by a voluntary dismissal by the plaintiffs.
Subsequently, the present suit involving the same 25 acres was filed by the plaintiffs (appellees). In this present action, the defendants were named as follows: (1) Charley and Margaret A. Wall, his wife, who are alleged to be the immediate grantors to the appellees, (2) Mr. Jack W. Simmons and Jack W. Simmons, Jr. and his wife, Letitia S. Simmons, who are alleged to be the grantors to defendant Charley Wall, and (3) Frank L. Pittman and Lois V. Pittman, his wife, who are alleged to be the grantors to the defendants Simmonses.
It is alleged in the complaint and it is stipulated to or proven by the testimony, that A. O. Duke and his wife, and J. L. Covington and his wife, had acquired title to certain lands by virtue of a tax deed, and had conveyed the lands described in said tax deed to Frank L. Pittman on May 28, 1945. The 25 acres involved in this suit were not described in the said tax deed and were not conveyed by Duke and Covington to the said Frank Pittman, although the plaintiffs now use the Duke and Covington deed as the beginning of the plaintiffs’ chain of title to the said 25 acres. It is well to note at this point that neither the tax deed to Duke and Coving-ton or the subsequent deeds to the successors in title from Duke and Covington down through the present plaintiffs ever included the said 25 acres of land which are forming the basis of this suit. No one in the chain of the title in this case has ever raised any question as to whether or *499 not Duke and Covington intended to get the said 25 acres when they acquired the tax deed. Therefore, it is assumed that the State had conveyed to Duke and Cov-ington all the land it intended to convey and did not include this 25 acres in dispute herein.
The defendant, Frank L. Pittman, who was called as a hostile witness by the plaintiffs, testified generally that at one time he thought the 25 acres actually belonged to him because of the tax deed to Duke and Covington and that he did fence a portion of it and cultivated the same. It is further brought out in the testimony that Frank L. Pittman and his wife agreed to sell the lands which they had acquired from Duke and Covington to Jack W. Simmons and Jack W. Simmons, Jr., but the said Simmonses required a survey and a quiet title suit before they would buy. The title to the land was quieted and a copy of the final decree in said quiet title suit is entered in evidence in this case. The testimony further shows that the attorneys for the Simmonses and for Mr. Pittman finally agreed upon the validity of the quiet title suit and prepared a deed based upon the description contained in the quiet title suit, as well as that contained in the perimeter survey made on the ground by a qualified surveyor. Pittman then conveyed said land to the Simmonses based on said description. Thereafter the Simmonses sold the same property by the same description to Charley Wall who in turn sold the same to Philip J. Fleming and wife, less certain parcels which had been previously conveyed by the Walls. The survey which had been used by Pittman and the Sim-monses at the time of the conveyance from Pittman to Simmonses had been prepared by Mr. Lester Flanagan, a licensed survey- or. Before the appellees, Flemings, bought the land from Dr. Wall, the Flemings had a survey made either by a Daffin firm or by the engineering firm of Wayne Colo-ney, and in the negotiations with Dr. Wall, the said Flemings had entered into an option to buy from Wall, in which option there is a provision stating:
“It is understood and agreed between the parties that the Buyer shall, prior to the exercise of this option and for the purpose of describing the land to be conveyed as aforesaid, have a description prepared of the approximately 925 acres, by a competent engineer, which description shall be subject to the approval of the Sellers, or their attorney.”
Subsequent to the option mentioned supra, the survey above mentioned was made and a description drawn according to said survey wherein it shows that only 915 acres of land were conveyed. This is the amount described in the deed from Dr. Wall and was the acreage paid for by the Flemings. The 25 acres involved in this suit were not included in the survey nor in the deeds to Flemings nor were they paid for by the Flemings under the per acre basis contained in the option. In other words, the Flemings contracted to buy 915 acres, and the description included 915 acres.
The appellees, by their complaint in the lower court, claim that there has been a mistake of fact in the description of the land intended to be conveyed by Pittman to Simmons and from Simmons to Wall and from Wall to Fleming, and that each of these prior grantees and grantors had intended to include the said 25 acres which is now in dispute.
It appears from the testimony from all of the witnesses that, although each subsequent grantee from Pittman on down to Fleming, had required a perimeter survey, and the deeds contained the actual land described in the survey, the parties all still claim that it was the intention of each party to include the 25 acres in dispute. The testimony was somewhat vague and uncertain in that it appears that the parties had a general idea of about where the boundaries were, although no one testified that they had followed the surveyor around to locate *500 the boundaries nor had any one requested the surveyor to include the 25 acres before either of said parties entered into the execution of the deeds.
Counsel for the defendants Pittman attempted to introduce evidence in rebuttal to the claim of the appellees in their complaint that they, the Flemings, had been in possession of the said 25 acres, by showing that a Mr. Anderson and a Mr. Van-Landingham were claiming and were in possession of the said 25 acres from about 1965 to date. At first, the trial court permitted the said testimony to be introduced, but later changed its mind after hearing further argument by counsel for the appel-lees, and struck all of the testimony showing that the property was in the possession of others than the Flemings at the time Fleming bought from Dr. Wall, the trial court stating that this question of possession would be proper in another law suit but had nothing to do with the reformation of the deeds. At this point the defendant, Pittman, objected to said ruling and has made the same as an assignment of error on this appeal. We think the trial court was in error in striking the testimony of the witnesses who claimed to be in possession at the time the Flemings purchased the land from Dr. Wall.
We think, and so hold that a deed will not be reformed so as to include land not owned by the grantor. Inasmuch as there was no showing that the grant from the sovereign by way of a tax deed was in error in excluding the 25 acres in question, it was incumbent upon and proper for the defendant to show in opposition to the allegations of the plaintiffs’ complaint that said 25 acres was in fact never intended to have been included in the original deed, but was in fact in the possession of and under claim of ownership by someone other than the appellees. The appellees must necessarily deraign their chain of title from the tax deed acquired by A. O. Duke and J. L. Covington and cannot go beyond that source in attempting to establish their ownership. The mere fact that the defendant, Frank L. Pittman, testified that he had substantially enclosed the parcel of land in question, did not and could not ripen into a title by adverse possession inasmuch as said land was not returned for taxes nor were any taxes paid thereon by the said Frank L. Pittman nor any of his successors in title, including the Flemings.
It is apparent from the record as a whole that none of the parties really were content to rely upon the general outline of where the previous grantee directed the boundaries to be and, therefore, they did in every case, require a survey. If the grantees were in doubt as to where the surveyor was running the lines, then there was nothing to keep such grantees from following and requiring the surveyor to show them the actual survey line which he had run and which he had depicted on a written survey plat. The failure to so do does, in our opinion, render the appellees’ prayer for relief without meritorious foundation under the law of reformation of instruments.
The law appears to be well-settled that the party seeking reformation of an instrument must rest upon an equity superior to that of him against whom it is sought.
There are too many discrepancies between the facts testified to by the plaintiffs and their prayer for relief. By their own admission, they knew that Mr. Anderson had been in possession of this 25 acres before they received the option from Dr. Wall. The option from Dr. Wall specifically limited the amount of land to be conveyed to the amount shown by the survey, which in this case, was 915 acres. Said option also shows that it was the intention of the Walls to sell only that land which they had acquired from the Simmonses, less the parcels they had previously sold to other parties. The evidence further shows that the Simmonses had well-known and capable counsel check the validity of the *501 quiet title suit as well as the description by the plat of the competent surveyor, and included into the deed only such lands as were plainly outlined by the surveyor’s plat.
The appellees had testified concerning certain surveys having been made and they also testified concerning a further survey which outlined only the land in dispute. The trial court refused to permit the defendant’s counsel to question the appellee concerning this last mentioned plat and thereby was in error in stopping the defense counsel from cross-examination of the appellee regarding it.
As heretofore stated, the appel-lees’ title, if valid at all as to these 25 acres, had to be based upon the tax deed to Duke and Covington. A tax deed issued pursuant to sale by operation of law, in which the owner of the land does not participate and in which there can be no mutual mistake, is not subject to reformation. See Carr v. City of Kissimmee, 80 Fla. 759, 86 So. 699. A tax deed can convey only such land as has been validly assessed, and if such deed should issue including other lands than that validly assessed, such deed would be invalid to convey any title from the sovereign. In the case sub judice, the appellees do not attempt to upset.the tax deed issued to Duke and Covington, but in fact stipulated that the disputed 25 acres are not described in any deed involved in this suit. The tax deed to Duke and Covington was platted by surveyors and was used in each of the deeds to the Pittmans, Simmonses, Walls, and Flemings. There being no basis for a record title to stand in the name of any of the parties defendants or plaintiffs, the court of equity could not reform that which did not exist in the first instance.
Even though there may have been some general mistake of intentions between the parties, such mistakes could not remedy the first mistake by Pittman, inasmuch as there is no claim that there was a mistake in the tax deed in question.
For the reasons stated, the final judgment is hereby reversed and set aside.
JOHNSON and CARROLL, DONALD K., JJ., concur.